UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| _____ | ) | |
| DAIRY FARMERS OF AMERICA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:22-cv-10422-JEK |
| | ) | |
| BERNON LAND TRUST, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER ON PLAINTIFF'S PETITION FOR ATTORNEY'S FEES AND COSTS

**KOBICK, J.**

Plaintiff Dairy Farmers of America, Inc., brought this action against defendant Bernon Land Trust, LLC ("BLT"), alleging that BLT had breached the terms of a lease and an option to purchase land in Franklin, Massachusetts. In January 2025, following a bench trial, the Court entered judgment for Dairy Farmers on both claims. Dairy Farmers now moves for attorney's fees and costs pursuant to a fee-shifting provision in the option to purchase. BLT opposes that motion, objecting to the reasonableness of the requested fee and arguing that Dairy Farmers' request exceeds the scope of the fee-shifting provision. For the reasons that follow, Dairy Farmers' motion will be granted in part and denied in part.

## BACKGROUND

Only the facts and procedural history relevant to Dairy Farmers' motion for attorney's fees and costs are recited here. A detailed description of the facts and legal issues in this litigation are set forth in the Findings of Fact and Conclusion of Law issued by this Court on January 28, 2025. ECF 155.

In May 2020, after successfully bidding for certain assets of Dean Foods Company in bankruptcy proceedings, Dairy Farmers acquired a milk processing plant located on approximately 175 acres of land in Franklin, Massachusetts (the "Franklin Premises") owned by BLT. *Id.* at 4, 53-54. Upon acquiring the processing plant, Dairy Farmers assumed a 100-year lease—comprising 20 five-year terms, renewable at the tenant's option—that BLT had executed with a previous tenant in 1986 (the "Lease"). *See id.* at 9; ECF 9-1, at 2-54 (Indenture of Lease dated December 30, 1986). The Lease included a provision providing for rent increases at the start of each rental period after the initial five-year term. *See* ECF 155, at 59. From 1992 to 2022, BLT calculated rent increases as the lesser of either the fixed annual rent during the prior five-year lease term multiplied by 115%, *or* the fixed annual rent during the prior five-year lease term multiplied by the change in the cost of living, as measured by the Consumer Price Index ("CPI"). *See id*. In June 2020, however, BLT informed Dairy Farmers that it had reinterpreted this provision, and that, moving forward, rent would be calculated by multiplying the previous term's rent by 115% *and* the CPI increase. *Id.* at 60.

Dairy Farmers also acquired an Option to Purchase the Franklin Premises, dated July 30, 1997, through the bankruptcy proceedings. *Id.* at 54-56; ECF 9-2 (Option to Purchase). In August 2021, Dairy Farmers informed BLT that it had decided to exercise the Option to Purchase and that the closing would occur in March 2022. *See* ECF 155, at 57. When it responded the following month, BLT took the position that the Option to Purchase was void, and it did not subsequently appear at the March 2022 closing. *See id.* at 57-58. Also in March 2022, Dairy Farmers began paying, under protest, rent in accordance with BLT's new method of calculation. *Id.* at 61.

Dairy Farmers filed the initial complaint on March 21, 2022, and its amended complaint on May 6, 2022. ECF 1, 9. The amended complaint asserted two breach of contract claims. The

first claim alleged that BLT breached the terms of the Option to Purchase by failing to convey the Franklin Premises. ECF 9, ¶¶ 42-47. The second claim alleged that BLT breached the terms of the Lease by demanding monthly rent in accordance with its new method of calculating rent rather than adhering to the prior method. *See id.* ¶¶ 48-53. Dairy Farmers sought specific performance of the Option to Purchase and damages for each month of rent it had overpaid since March 2022. *Id.* at 11. Both the original and the amended complaint demanded trial by jury "of all issues so triable." ECF 1, at 8; ECF 9, at 12. When it answered the amended complaint, BLT asserted counterclaims seeking a declaration that the Option to Purchase was void and unenforceable, and a declaration that it had properly calculated the monthly rent. ECF 11, at 35-37, ¶¶ 72-86. BLT likewise demanded trial by jury "of all issues so triable." *Id.* at 37. This Memorandum will refer to Dairy Farmers' breach of contract claim regarding the Option to Purchase, together with BLT's corresponding counterclaim, as the "Option Claims," and to Dairy Farmers' breach of contract claim regarding the Lease, together with BLT's corresponding counterclaim, as the "Lease Claims."

The parties filed cross-motions for summary judgment in early 2023, which the Court denied in September of that year. ECF 74. Shortly after, the Court scheduled trial to begin on May 20, 2024. ECF 78. Because the parties sought both equitable and legal remedies—the Option Claims involved Dairy Farmers' request for specific performance and BLT's equitable defenses, while the Lease Claims involved Dairy Farmers' demand for damages—BLT raised the possibility, during a January 2024 status conference, of empaneling a jury to hear all evidence presented in the case, but treating the jury as advisory with respect to the equitable claims. ECF 87; *see also* ECF 112-1, at 9.

On April 15, 2024, Dairy Farmers and BLT filed certain relevant motions in limine. BLT moved for a jury trial on all disputed evidence, with the jury serving in an advisory capacity on any equitable claims and defenses. ECF 91. Dairy Farmers moved to bifurcate the trial, requesting that the Court first hold a jury trial on all claims and its request for damages, and then, with respect to the Option Claims, hold a bench trial on Dairy Farmers' request for specific performance and BLT's equitable defenses. ECF 99. In a docket order issued on April 29, 2024, the Court noted that although the parties had assumed that the validity of the Option to Purchase was triable to a jury by right, the Option Claims sought only equitable relief, and it was therefore likely that no jury right attached. ECF 114. The Court ordered the parties to be prepared to address, at a status conference scheduled for May 6, 2024, whether the Option Claims should be tried to the Court in a bench trial and the Lease Claims tried to a jury. *Id.* After the Court indicated, during that status conference, that it intended to deny BLT's request to empanel an advisory jury on the equitable claims, the parties agreed to a bench trial on all claims. *See* ECF 118, 120.

The Court held a bench trial in late May 2024, and the parties presented closing arguments the following month. On January 28, 2025, the Court issued its Findings of Fact and Conclusions of Law, ECF 155, and entered judgment for Dairy Farmers on all claims, ECF 156. The Court concluded that Dairy Farmers had validly acquired the Option to Purchase through the Dean Foods bankruptcy and, because the balance of the equities weighed in its favor, awarded Dairy Farmers specific performance of the Option to Purchase. ECF 155, at 63-103; ECF 156, ¶ 1. The Court further concluded that the Lease provision governing rent increases was ambiguous, and that virtually all of the extrinsic evidence supported Dairy Farmers' interpretation of the provision. ECF 155, at 105-09. Accordingly, the Court awarded Dairy Farmers $536,820.55 in damages on its Lease Claim, which represented the difference between what Dairy Farmers had paid in rent

under protest since March 2022 and the amount that it should have paid had the rent increase been correctly calculated. *See id.* at 108-109; ECF 156, ¶ 2. The Court also concluded that, as the prevailing party, Dairy Farmers was entitled to reasonable attorney's fees and costs pursuant to a fee-shifting provision in the Option to Purchase. ECF 155, at 109; ECF 156, ¶ 4. That provision reads in relevant part: "In the event either party files a lawsuit in connection with this Option to Purchase or any provisions contained herein, then the party that prevails in such action shall be entitled to recover from the nonprevailing party, in addition to all other remedies or damages as permitted herein, reasonable attorneys' fees and costs of court incurred in such lawsuit." ECF 9-2, § 15.

On March 14, 2025, Dairy Farmers filed a motion seeking ▬▬▬▬ attorney's fees and ▬▬▬▬ costs. ECF 159 (redacted motion).▬▬▬▬[1] It supported that motion with a memorandum of law and a declaration submitted by a partner at Latham & Watkins LLP, the law firm that represented Dairy Farmers throughout the litigation. Dairy Farmers attached several exhibits to this declaration, including a copy of all invoices that it received for legal services in this case between August 19, 2021 and July 22, 2024, and an itemized spreadsheet supporting its request for costs. In April 2025, BLT filed an opposition to Dairy Farmers' fee petition and a declaration submitted by a partner on its litigation team. Dairy Farmers subsequently filed a motion for leave to file a reply brief, which BLT opposed, and the Court denied. Following a hearing, the Court took Dairy Farmers' motion under advisement.

---

[1] The Court granted the parties' respective requests to file under seal certain documents related to Dairy Farmers' motion for attorney's fees and costs. ECF 158, 163. References and citations to materials filed under seal have been redacted from this Memorandum.

## STANDARD OF REVIEW

"Where, as here, the court's jurisdiction is based on diversity of the parties, a district court's award of attorneys' fees is governed by relevant state law." *IOM Corp. v. Brown Forman Corp.*, 627 F.3d 440, 451 (1st Cir. 2010). Massachusetts recognizes "two permissible approaches to determining attorneys' fees pursuant to a contractual agreement": (1) the lodestar approach and (2) the multi-factor analysis originally outlined in *Cummings v. National Shawmut Bank of Boston*, 284 Mass. 563 (1934). *In re Volkswagen and Audi Warranty Extension Litig.*, 692 F.3d 4, 21 (1st Cir. 2012). Under the lodestar approach, which will be applied in this case, "attorneys' fees are 'calculated by multiplying the number of hours reasonably spent on the case times a reasonable hourly rate.'" *Id.* (quoting *Fontaine v. Ebtec Corp.*, 415 Mass. 309, 324 (1993)).

"The party claiming attorneys' fees bears the burden of proving the reasonableness of the hours it claims," *Burke v. McDonald*, 572 F.3d 51, 63 (1st Cir. 2009), and "producing materials that support the request," which "should include counsel's contemporaneous time and billing records, suitably detailed, and information [about] the law firm's standard billing rates," *Hutchinson ex rel. Julien v. Patrick*, 636 F.3d 1, 13 (1st Cir. 2011) (citations omitted). It is "the court's prerogative (indeed, its duty) to winnow out excessive hours." *Gay Offs. Action League v. Puerto Rico*, 247 F.3d 288, 296 (1st Cir. 2001). That said, the court's task "'is to do rough justice, not to achieve auditing perfection.'" *Pérez-Sosa v. Garland*, 22 F.4th 312, 321-22 (1st Cir. 2022) (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)). A court may accordingly "'take into account [its] overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.'" *Id.* at 322 (quoting *Fox*, 563 U.S. at 838).

**DISCUSSION**

BLT argues that Dairy Farmers' fee request must be reduced for three overarching reasons: (1) Dairy Farmers is entitled to attorney's fees only for work performed in connection with the Option Claims, not for work related to the Lease Claims; (2) Dairy Farmers' requested fee is not reasonable; and (3) Dairy Farmers may recover only "costs of court," not all costs it incurred during this litigation.

## I.    <u>Attorney's Fees for Work on the Lease Claims.</u>

BLT contends that because the Lease did not contain a fee-shifting provision, Dairy Farmers is entitled to attorney's fees only for work that it performed in connection with the Option Claims. "Massachusetts generally follows the 'American rule' and denies recovery of attorney's fees unless such fee-shifting is authorized by contract, statute, or court rule." *Wong v. Luu*, 472 Mass. 208, 215 (2015). The fee-shifting provision in the Option to Purchase provides in relevant part that "[i]n the event either party files a lawsuit *in connection with this Option to Purchase or any provisions contained herein*, then the party that prevails in such action shall be entitled to recover from the nonprevailing party, in addition to all other remedies or damages as permitted herein, reasonable attorneys' fees and costs of court incurred in such lawsuit." ECF 9-2, § 15 (emphasis added). "[A]s a general rule, fee shifting is permitted only as to the qualifying successful claims," unless the other successful claims were "inextricably intertwined" with the qualifying claims. *KPS & Assocs., Inc. v. Designs by FMC, Inc.*, 99-cv-11992-RWZ, 2003 WL 1538540, at *1 (D. Mass. Mar. 25, 2003) (addressing fee shifting authorized by Chapter 93A).[2]

---

[2] At the hearing, Dairy Farmers advocated for the application of a less stringent standard, arguing that a prevailing party is entitled to attorney's fees for time spent on any successful claim that presents "a substantial question" arising from the same "common nucleus of facts" underlying the qualifying claim. *Batchelder v. Allied Stores Corp.*, 393 Mass. 819, 822 (1985). That standard is cabined, however, to applications for attorney's fees brought under M.G.L. c. 12, § 11*I*, which

Dairy Farmers is not entitled to attorney's fees for time spent on the Lease Claims because those claims were not inextricably intertwined with the Option Claims. To be sure, the claims are related—both sets of claims concern the Franklin Premises, and the Option to Purchase provided that the purchase price for the Franklin Premises would be ten times "the then current annual rental amount in effect under the Lease at the time the Option is exercised." ECF 9-2, § 4. As this Court previously noted, however, the Option Claims and the Lease Claims arose from "discrete disputes." ECF 114. The Option Claims concerned the validity and enforceability of the Option to Purchase that Dairy Farmers was assigned when it bought certain assets of Dean Foods out of bankruptcy, whereas the Lease Claims concerned the interpretation of an ambiguous provision in the Lease governing the calculation of rent for the Franklin Premises. *See* ECF 155, at 63, 105. Moreover, Dairy Farmers' success on the Option Claims did not hinge on its success on the Lease Claims: the issue of whether BLT breached the Lease and incorrectly calculated the rent for the Franklin Premises was unrelated to the issue of whether Dairy Farmers acquired a valid and enforceable Option to Purchase.

Dairy Farmers' counsel failed to consistently differentiate between the time they devoted to the Lease and Options Claims in their billing records, precluding the Court from simply excising the time they devoted to the Lease Claims when calculating the lodestar. The parties thus agree that, should the Court conclude that Dairy Farmers is not entitled to attorney's fees for the Lease Claims, it should apply an across-the-board reduction to Dairy Farmers' fee request based on a

---

authorizes the prevailing party in a civil rights suit brought under M.G.L. c. 12, § 11H to obtain "reasonable attorneys' fees." When the Supreme Judicial Court adopted this standard, which also governs fee applications in cases brought under an analogous federal civil rights statute, 42 U.S.C. § 1988, it explained that civil rights statutes should be liberally construed and that its adoption of this standard would "enhanc[e] the statutory goal of encouraging private enforcement of civil rights violations." *Batchelder*, 393 Mass. at 822. That rationale does not apply to this case, which concerned land and contract disputes, not civil rights violations.

reasonable estimate of the time that its counsel spent on those claims. BLT contends that a 40% reduction is appropriate. It characterizes this figure as its "reasonable best estimate" of the amount of time that Dairy Farmers' counsel spent on the Lease Claims "based on a review of the pleadings, motions, and Latham's invoices." ECF 164, at 10. Yet BLT supports this request only by noting that the Amended Complaint devoted approximately 60% of its factual allegations to its Lease Claim and that Dairy Farmers devoted roughly 40% of the argument in its summary judgment motion to that claim. *See id.* BLT offers no argument as to why a pleading and an opposition brief would provide the best reasonable estimate of the time that Dairy Farmers' counsel devoted to the Lease Claims in a case that is over three years old and that was decided following a bench trial. Nor could it. The Findings of Fact and Conclusions of Law issued by the Court, ECF 155, as well as the proposed and amended findings of fact and conclusions of law submitted by the parties, ECF 124-1, 125-1, 148, 150, are far more holistic and comprehensive barometers of how the parties allocated their time and effort between the Lease and Option Claims in this litigation. The Court will accordingly use these documents to estimate the time that Dairy Farmers' counsel devoted to the Lease Claims.

The facts relevant to the Option and Lease Claims overlapped in part, but the legal analysis for these sets of claims was distinct. *Compare* ECF 155, at 2-61 (findings of fact), *with id.* at 63-105 (conclusions of law regarding the Option Claims), *and id.* at 105-109 (conclusions of law regarding the Lease Claims). The Court will therefore calculate the portion of the conclusions of law devoted to the Lease Claims in each of these documents—i.e., divide the number of pages devoted to the Lease Claims by the total number of pages devoted to conclusions of law—to estimate the amount of time that Dairy Farmers' counsel devoted to those claims. The following table depicts the results of these calculations:

| | Option Claims | Lease Claims |
|---|---|---|
| Dairy Farmers Pre-Trial Submission (ECF 124-1) | 81.25% | 18.75% |
| BLT Pre-Trial Submission (ECF 125-1) | 86.96% | 13.04% |
| Dairy Farmers Post-Trial Submission (ECF 148) | 90.91% | 9.09% |
| BLT Post-Trial Submission (ECF 150) | 91.49% | 8.51% |
| Court's Conclusions of Law (ECF 155) | 91.30% | 8.70% |
| **Average** | **88.38%** | **11.62%** |

On average, across these documents, 11.62% of the conclusions of law were devoted to the Lease Claims and 88.38% were devoted to the Option Claims. The Court will accordingly apply a global reduction of 11.62% to Dairy Farmers' fee request to account for the time that its counsel devoted to the Lease Claims.

## II.    The Reasonableness of Dairy Farmers' Fee Request.

BLT contends that Dairy Farmers' fee request is unreasonable under the lodestar method for four reasons: (1) it is disproportionately high in comparison to the value of Dairy Farmers' recovery; (2) Dairy Farmers' counsel seeks reimbursement for excessive and unnecessary hours; (3) Dairy Farmers' counsel has engaged in "'bad' billing practices such as block billing and billing for non-core work"; and (4) Dairy Farmers has not submitted billing records substantiating its request for fees for the time its counsel devoted to preparing the motion for attorney's fees. ECF 164, at 11.

### A.    Dairy Farmers' Recovery.

The parties offer starkly different assessments of the degree of Dairy Farmers' success in this litigation. Dairy Farmers argues that the value of its success exceeds $200 million, a figure representing what Dairy Farmers estimates it would have paid in rent between 2022 and 2087, when the Lease was set to expire, had it not prevailed on the Option Claims and purchased the Franklin Premises. BLT argues that the value of Dairy Farmers' success is only $9.6 million, the

amount Dairy Farmers paid for the Franklin Premises after prevailing on the Option Claims. Dairy Farmers contends that its requested fee is reasonable because it represents a small fraction of its estimation of the value of its success, whereas BLT contends that Dairy Farmers' requested fee is unreasonable because it amounts to a significant percentage of BLT's estimation of the value of Dairy Farmers' success.

Unlike money damages, a parcel of real property, like the Franklin Premises, is not fungible. The value of the declaratory and equitable relief obtained by Dairy Farmers—namely, an order affirming its right to exercise the Option to Purchase and ordering BLT to sell Dairy Farmers the Franklin Premises pursuant to that Option—cannot be reduced to a definitive dollar amount. The value of Dairy Farmers' success instead varies depending on how the inquiry is framed. Dairy Farmers' more than $200 million estimate and BLT's $9.6 million estimate represent the outermost extremes of what could conceivably be regarded as the value of Dairy Farmers' success, but alternative framings may be more reasonable. One could argue, for example, that the value of Dairy Farmers' success should be measured by reference to the fair market value of the Franklin Premises—$48.7 million, according to BLT's January 2023 appraisal—or the roughly $40 million delta between the fair market value of the Franklin Premises and what Dairy Farmers actually paid for the property.

In the circumstances of this case, the Court need not determine the best method for measuring the value of Dairy Farmers' success. The Supreme Court has never required strict proportionality between the value of a prevailing party's success and their requested fee. *See Hensley v. Eckerhart*, 461 U.S. 424, 436-37 (1983); *Spooner v. EEN, Inc.*, 644 F.3d 62, 69 (1st Cir. 2011). At bottom, "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Hensley*, 461 U.S. at 435. Regardless of whether one pegs the

value of Dairy Farmers' success at $48.7 million, or some higher or lower value, Dairy Farmers'

fee request is proportionate to the excellent results it obtained in this case.

     B.    <u>Excessive and Unnecessary Hours.</u>

BLT next argues that the number of hours that Dairy Farmers' counsel spent on this

litigation is objectively unreasonable. BLT specifically objects to Dairy Farmers' request for fees

related to time its counsel devoted to four categories of work: (1) prelitigation work; (2) unfiled

and withdrawn motions; (3) staffing and transition time; and (4) jury trial preparation. BLT also

contends that the amount of time that Dairy Farmers' counsel devoted to this litigation is excessive

because it significantly exceeds the amount of time spent by BLT's counsel. These objections are

not persuasive.

     *1.  Prelitigation Work.*

BLT contends that because Dairy Farmers is entitled to attorney's fees incurred only for

work on a "lawsuit" concerning the Option to Purchase, it is not entitled to fees for work its counsel

performed before they began drafting the complaint. Except where a fee-shifting provision

provides otherwise, however, the general rule is that "an award of attorneys' fees 'may include

compensation for time spent . . . [on] prelitigation services necessary or beneficial to the

litigation.'" *E.E.O.C. v. AutoZone, Inc.*, 934 F. Supp. 2d 342, 352 (D. Mass. 2012) (quoting *Mezo*

*v. Int'l Union, United Steelworkers of Am.*, 558 F.2d 1280, 1283 (7th Cir. 1977)). Indeed, "[t]o

determine the number of hours reasonably expended on the litigation, an inquiring court must look

not to labels but, rather, to the nature of the work and its utility to the case at hand." *Pérez-Sosa*,

22 F.4th at 324 (quotation marks and citations omitted). A prevailing party is entitled to reasonable

attorney's fees for "work that is 'useful and of a type ordinarily necessary to secure the final result

obtained from the litigation.'" *Id.* (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 561 (1986)).

The invoices submitted by Dairy Farmers' counsel show that the challenged prelitigation work was beneficial and likely necessary for the litigation. *See id.*; *AutoZone*, 934 F. Supp. 2d at 352. Dairy Farmers seeks attorney's fees for work that its counsel performed beginning in August 2021, which corresponds with when Dairy Farmers learned that BLT intended to contest any exercise of the Option to Purchase. *See* ECF 155, at 57. It was reasonable for Dairy Farmers' counsel, upon learning of BLT's position, to begin preparing for litigation in connection with its attempt to exercise the Option to Purchase. After Dairy Farmers notified BLT that it had decided to exercise the Option to Purchase, BLT responded, via a letter dated September 1, 2021, that it considered the Option to Purchase to be void. *See id.* BLT's refusal to honor Dairy Farmers' exercise of the Option to Purchase is the principal event that precipitated this litigation.

The invoices show that some of the work performed by Dairy Farmers' counsel after this date pertained to preparation for the March 15, 2022 closing on the sale of the Franklin Premises. ████████████████████████████████████████████████████████████████ ███████████████████████████████████ But the invoices also indicate that Dairy Farmers' counsel was simultaneously preparing to file a lawsuit if BLT failed to appear at the closing. ██ ██ █████████████████████████████████████████████████ ████████████████████████████████████████████████ All of that work was either necessary or beneficial to this litigation, which commenced when Dairy Farmers filed the complaint on March 21, 2022, six days after BLT failed to appear at the closing.

2. *Discovery Motions.*

BLT argues that the Court should strike billing entries pertaining to a motion for a protective order that Dairy Farmers filed but later withdrew, and a motion that Dairy Farmers prepared, but did not file, concerning a dispute over BLT's privilege log. A Court may reduce hours for time spent on "unproductive, excessive, or otherwise unnecessary" work. *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 950 (1st Cir. 1984). However, time spent on a motion is not unproductive simply because that motion is not filed or is later withdrawn. *See, e.g.*, *ExperExchange, Inc. v. Doculex, Inc.*, No. 08-cv-03875-JCS, 2010 WL 1881484, at *9 (N.D. Cal. May 10, 2010) ("The fact that the motion was not, ultimately, filed, does not mean that the time spent preparing the motion was unreasonable."). Although the informal resolution of discovery disputes is preferable and encouraged by the Federal Rules of Civil Procedure, discovery motions are nevertheless filed in the ordinary course of litigation. *See* Fed. R. Civ. P. 37 (rules governing the resolution of discovery motions and procedures, such as meet-and-confers and sanctions, that encourage informal resolution of discovery disputes); *see also* ECF 164, at 5 (BLT acknowledging that "relatively few disputes arose in discovery, and none required Court intervention"). Sometimes, only after a party files a discovery motion, or after it informs the other party that it is prepared to do so, is an informal resolution reached.

That is what occurred here. Dairy Farmers did not file its motion concerning BLT's privilege log because, after "considerable back and forth negotiations," it ultimately obtained the course-of-conduct evidence it believed had been improperly designated as privileged. ECF 160, at 14. And Dairy Farmers withdrew its motion for a protective order on mootness grounds, representing that the parties had reached a compromise. *See* ECF 44 (indicating that one of the two depositions at issue had already occurred and that BLT had agreed to conduct the other deposition

remotely). The time that Dairy Farmers' counsel spent on these motions was reasonable, especially given that the parties did not otherwise engage in discovery-related motion practice.

### 3. Jury Trial Preparation.

BLT next contends that the time Dairy Farmers' counsel devoted to preparing for a jury trial was excessive because the case was resolved after a bench trial, which Dairy Farmers stipulated to "on the eve of trial," after "the Court questioned whether a jury would be appropriate." ECF 164, at 13. This objection is not persuasive because Dairy Farmers' conduct—that is, its decision to prepare for and conduct a mock jury exercise, as well as its decision to stipulate to a bench trial—was reasonable under the circumstances.

The amended complaint asserted two breach of contract claims and demanded a trial by jury "of all issues so triable." *See* ECF 9, at 12 & ¶¶ 42-53. On its Option Claim, Dairy Farmers requested the remedy of specific performance, which sounds in equity and is to be decided by a court. *See id.* at 11; *Warner v. Rossignol*, 513 F.2d 678, 683-84 (1st Cir. 1975). But on its Lease Claim, Dairy Farmers requested a damages remedy, which sounds in law and is to be decided by a jury. *See* ECF 9, at 11; U.S. Const. am. VII. BLT asserted two counterclaims seeking declaratory judgment pertaining to the Lease and the Option to Purchase, and, although those counterclaims sounded in equity, it likewise demanded a trial by jury "of all issues so triable." ECF 11, at 35-37, ¶¶ 72-86; *Eccles v. Peoples Bank of Lakewood Vill., Cal.*, 333 U.S. 426, 431 (1948). BLT does not dispute that it was reasonable for Dairy Farmers to prepare for a jury trial on the Lease Claims.

The parties could have anticipated from the inception of this litigation that they were not entitled to a jury trial on the Option Claims. *See* Charles A. Wright & Arthur R. Miller, 9 Fed. Prac. & Proc. § 2309 (4th ed. Sept. 2025 update) ("Wright & Miller") ("An action for specific performance of a contract historically is equitable in nature. Therefore, if this is the only relief

sought on a particular claim, there is no jury trial right."). At the January 25, 2024 status conference, Dairy Farmers acknowledged that claims sounding in equity would be decided by the Court and claims sounding in law would go to a jury. *See* ECF 112-1, at 10. Although BLT agreed at that conference that the parties' equitable claims would be decided by the Court, it expressed its intent to ask the Court to allow the jury to consider all evidence but sit in an advisory capacity on the equitable claims. The parties filed motions in accordance with their respective positions on April 15, 2024. ECF 91, 99.

Given BLT's motion to empanel an advisory jury, Dairy Farmers acted reasonably in preparing to present its entire case to a jury, even if the jury would offer only an advisory opinion as to the equitable claims. In a docket order entered on April 29, 2024, the Court ordered the parties, in advance of a status conference scheduled for May 6, 2024, to meet and confer concerning whether the right to a jury trial attached to the dispute over whether BLT breached the Option to Purchase. ECF 114. The parties subsequently filed supplemental briefs reiterating their respective requests to bifurcate the trial and to empanel an advisory jury. ECF 116, 117. Only after the Court informed the parties at the May 6, 2024 status conference that it did not intend to allow BLT's request to present all evidence to the jury did they stipulate to a bench trial on all counts. *See* ECF 118, 120.

Under the circumstances, BLT's argument that Dairy Farmers' "last minute flip-flop on the jury caused both sides to spend more time and money than they would have had they either planned for a jury or a bench trial from the start" is disingenuous. ECF 164, at 14. Just as Dairy Farmers demanded a jury trial "of all issues so triable" in its original and amended complaints, so too did BLT in its counterclaims. *See* ECF 1, at 8; ECF 9, at 12; ECF 11, at 37. After Dairy Farmers informed BLT of its intent to move to bifurcate the trial in an email dated April 3, 2024, BLT

informed Dairy Farmers that it intended to move to empanel an advisory jury for the Option Claims. ECF 112-1, at 9-10. And although Dairy Farmers "propose[d] [that] the parties stipulate to have the entire case tried to the Court" in an email dated April 9, 2024, BLT rejected that proposal two days later. *Id.* at 2-3, 6. The parties accordingly filed cross-motions concerning bifurcation on April 15, 2024, ECF 91, 99, and Dairy Farmers conducted its mock jury exercise in late April 2024, *see* ECF 164, at 8. All of the time entries challenged by BLT regarding this issue are dated between March 13 and May 6, 2024. ███████████████[3] It was reasonable for Dairy Farmers to prepare for a jury trial while BLT was actively requesting, over Dairy Farmers' objection, that the Court empanel an advisory jury to hear all evidence in the case. The Court accordingly declines to reduce Dairy Farmers' requested fee based on the time it spent preparing for a jury trial.

### 4. *Overstaffing.*

BLT next argues that Dairy Farmers' requested fee must be reduced because it staffed too many litigation partners on this case—Dairy Farmers staffed three litigation partners, whereas BLT staffed only one—and because it improperly seeks fees for time that its partners spent "getting up to speed." ECF 164, at 13. Neither argument is persuasive. For almost two years, Dairy Farmers' counsel assigned a single litigation partner, Kenneth Parsigian, to work on this case. But in November 2023, the Court scheduled trial for May 2024, ECF 78, and Attorney Parsigian retired from his firm's partnership the following month, ECF 161-12, at 3-4. Attorney Parsigian was replaced by two litigation partners—William Trach and Matthew Salerno—who staffed the case through trial. Attorney and staff turnover is common, particularly when litigation spans multiple

---

[3] ████████████████████████████████████████████
████████████

years, and it is not unreasonable for two partners to prepare and bring a case to trial. The time that Dairy Farmers' trial partners spent "getting up to speed" was also reasonable in the circumstances of this case. ██████████████████████████████

█████████████████████████████████████████████████████████████

████████████████████████████████████████

The time entries challenged by BLT are, moreover, not solely attributable to the trial partners' need to get "up to speed." Many of these entries pertain to the type of work—reviewing trial exhibits, workshopping strategy, and sequencing evidence—that any attorney would do to prepare for trial. ███████████████████████████████████████████████

████████████████████████████████████████[4] To be sure, several of the time entries challenged by BLT can fairly be attributed to the trial partners' need to get "up to speed" on the case. █████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████ Dairy Farmers' trial partners did not, however, spend an excessive amount of time onboarding. Having carefully reviewed the challenged time entries, the Court concludes that the time that Dairy Farmers' trial partners devoted to reviewing case materials in preparation for trial was reasonably spent and will not be deducted from Dairy Farmers' fee award.

---

[4] ████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████
█████████████████

5.   *Excessive Hours.*

BLT argues that the number of hours billed by Dairy Farmers' counsel is excessive because BLT's counsel billed substantially fewer hours.[5] This argument lacks merit. The fact that Dairy Farmers' counsel devoted more time to this case than BLT does not, without more, establish that such time was excessive. BLT cites no authority suggesting otherwise.

C.    Billing Practices.

BLT next argues that Dairy Farmers' requested fee must be reduced because Dairy Farmers' counsel failed to distinguish between core and non-core work and because they engaged in block billing. As to the first argument, the First Circuit has approved of "fee awards that set two separate hourly rates for a particular attorney—one for 'core' tasks like 'legal research, writing of legal documents, court appearances, negotiations with opposing counsel, monitoring, and implementation of court orders,' and a lower one for 'non-core' tasks, which are 'less demanding,' such as 'letter writing and telephone conversations.'" *Matalon v. Hynnes*, 806 F.3d 627, 638 (1st Cir. 2015) (quoting *Brewster v. Dukakis*, 3 F.3d 488, 492 n.4 (1st Cir. 1993)). Non-core work also includes "[c]o-counsel conferences" and "attendance at court hearings in a non-participatory capacity." *Guckenberger v. Boston Univ.*, 8 F. Supp. 2d 91, 101 (D. Mass. 1998) (quotation marks omitted). When courts distinguish between core and non-core work, the hourly rate applied to non-core work is typically two-thirds the hourly rate applied to core work. *See id.* at 102 (citing

---

[5] ████████████████████████████████████████████████████

19

*Brewster*, 3 F.3d at 492); *see also Mills v. Cabral*, No. 06-cv-10133-RGS, 2010 WL 2553889, at *1 (D. Mass. June 18, 2010) (reducing billing rate by roughly 35% for non-core work).

Dairy Farmers has not distinguished between the time that its attorneys devoted to core and non-core work. ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ The nearly 300 pages of invoices submitted by Dairy Farmers' counsel indicate that attorneys on its core litigation team devoted most of their time to core work, such as conducting legal research; drafting, editing, and reviewing documents; and developing and refining case strategy. ████████████████ But the invoices also indicate that attorneys on Dairy Farmers' core litigation team periodically billed for non-core work throughout this litigation. ████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████ While this work appears to have been reasonably performed by attorneys on Dairy Farmers' core litigation team, rather than support personnel, the Court agrees that Dairy Farmers' counsel cannot reasonably bill for this work at the same rate as they bill for core legal work. *See Matalon*, 806 F.3d at 638. Dairy Farmers' fee request will accordingly be reduced to account for the time that its counsel spent on non-core work.

The Court cannot, however, disaggregate the time that Dairy Farmers' counsel devoted to core and non-core work because the invoices they have submitted are replete with block billing. The term "block billing" refers to "the time-keeping method by which an attorney lumps together the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *AutoZone*, 934 F. Supp. 2d at 354 (quotation marks omitted). This practice is generally disfavored "because it requires deciphering on the judges' part," *id.* at 355 (brackets and quotation

marks omitted), and because it violates the rule that billing records should indicate "the date the work occurred, the kinds of work that were done and *the percentage of time spent at each task*," *Pérez-Sosa*, 22 F.4th at 329 (quotation marks and brackets omitted) (emphasis added). Throughout their billing records, Dairy Farmers' counsel have used this approach, collapsing work performed by an attorney on a given day into a single block-billed entry.[6] While many of the billing entries describe the tasks that Dairy Farmers' counsel worked on with adequate specificity, counsel have not consistently complied with their duty to specify "the percentage of time spent at each task." *Id.* (quotation marks omitted).

---

[6]


The Court will accordingly apply a global reduction to Dairy Farmers' requested fee to account for its use of block billing and its failure to bill for non-core work at a reduced rate. *See Matalon*, 806 F.3d at 639 (district court may "employ an across-the-board rate cut" where counsel fails to distinguish between core and non-core work). Courts in this circuit routinely impose global reductions of 15% to 25% when confronted with similar circumstances, though this range can vary significantly depending on the facts of the case. *See, e.g.*, *Torres-Rivera v. O'Neill-Cancel*, 524 F.3d 331, 340 (1st Cir. 2008) (district court's imposition of 15% global reduction "plainly [fell] within the range of reasonableness" where billing records included insufficiently described block-billed entries); *Frost v. Town of Hampton*, No. 09-cv-339-JL, 2010 WL 1667290, at *4 (D.N.H. Apr. 23, 2010) (applying 15% global reduction where block billing prevented court from determining whether attorney "performed certain tasks in an efficient manner"); *Trindade v. Grove Servs., Inc.*, No. 19-cv-10717-ADB, 2023 WL 12023449, at *4 (D. Mass. Nov. 20, 2023) (applying 10% reduction to remedy intermittent block billing and a "combination" of other issues raised by the defendants); *Davis v. Footbridge Eng'g Servs., LLC*, No. 09-cv-11133-NMG, 2011 WL 3678928, at *4-5 (D. Mass. Aug. 22, 2011) (applying 30% global reduction where party block billed and failed to distinguish between core and non-core work).

The Court concludes that a 20% global reduction is warranted to account for the time that Dairy Farmers' counsel devoted to non-core work and to sanction their use of block billing. A larger reduction is not warranted, however, because Dairy Farmers' counsel appear to have devoted most of their time to core work.

D.    The Fee Petition.

BLT contends that the Court should not award attorney's fees to Dairy Farmers for the time its counsel spent preparing the motion for attorney's fees because Dairy Farmers has not submitted

time records substantiating that request. In general, "the absence of detailed contemporaneous time records, except in extraordinary circumstances, will call for a substantial reduction in any award or, in egregious cases, disallowance." *Grendel's Den*, 749 F.2d at 952. While the Court has no reason to doubt the representation that Dairy Farmers has incurred fees in connection with its counsel's preparation of the fee petition, ████████████ BLT is correct that Dairy Farmers has failed to provide any time records supporting that representation. Specifically, Dairy Farmers has not submitted billing records for any work that its counsel performed after July 22, 2024, nor has it requested leave to do so. Dairy Farmers' fee request for work performed in connection with its fee petition will accordingly be reduced by 70%.████████████

████████. *See Torres-Rivera*, 524 F.3d at 340 ("Because litigating a fee petition is typically an uncomplicated exercise, fees for such work are often calculated at lower rates than those deemed reasonable for the main litigation.").

  E. <u>Summary and Lodestar Calculation.</u>

  For the foregoing reasons, the Court will apply one specific reduction and two global reductions to Dairy Farmers' requested fee. First, the fee Dairy Farmers seeks for time its counsel devoted to preparing the fee petition will be reduced by 70% because Dairy Farmers has not provided detailed contemporaneous time records supporting this request. After this reduction is applied, the Court will calculate a preliminary lodestar, to which it will then apply a global reduction of 31.62%. This reduction consists of an 11.62% reduction to account for the time Dairy Farmers' counsel devoted to the Lease Claims, which fall outside the scope of the Option to Purchase's fee-shifting provision, and a 20% reduction to account for its counsel's failure to bill for non-core work at a lower rate and their use of block billing.

The following table depicts the attorney's fees that Dairy Farmers requests for work performed at each phase of this litigation, as well as the application of the 70% reduction to the fee Dairy Farmers requests for the time its counsel devoted to preparing the fee petition:



The resulting lodestar ██████████ is then subject to a global reduction of 31.62% ██

████████, resulting in a final reasonable attorney's fee of $4,437,026.61.

## III.    Costs.

Finally, Dairy Farmers seeks costs incurred for, among other things, court fees, travel, transportation, lodging, meals, document preparation, depositions, a mock trial exercise, and a document review vendor. Under Federal Rule of Civil Procedure 54(d), "costs—other than attorney's fees—should be allowed to the prevailing party." As used in Rule 54(d), the term "costs" is defined in 28 U.S.C. § 1920. *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441 (1987). And under Section 1920, in turn, Dairy Farmers is entitled to recover the following costs: "(1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of [Title 28]; and (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees,

expenses, and costs of special interpretation services." 28 U.S.C. § 1920; *see In re Two Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 994 F.2d 956, 962 (1st Cir. 1993) ("[T]he statute and rule, read together, signify that a district court lacks the ability to assess 'costs' under Rule 54(d) above and beyond those that come within the statutory litany.").

BLT does not dispute that, as the prevailing party, Dairy Farmers is entitled to court costs, including docketing fees and pro hac vice motions ███████████. Irrespective of the existence of a fee-shifting provision, such costs are recoverable under 28 U.S.C. § 1920(1). That statute also entitles Dairy Farmers to recover costs incurred for copying and printing documents for trial. *Id.* § 1920(4). Dairy Farmers spent ████████ on fees for printing documents and other materials for trial. ████████████[7] Such documents were "necessarily obtained for use in the case." 28 U.S.C. § 1920(4). Accordingly, pursuant to Section 1920, Dairy Farmers is entitled to $24,683.70 in costs, which sum represents ██████████ court costs and ██████████ costs incurred copying and printing materials for trial.

In addition to the costs authorized by Section 1920, Dairy Farmers further contends that the Option to Purchase entitles it to recover costs of travel, transportation, lodging, meals, document retrieval, depositions, a mock trial exercise, and a document review vendor. The Option to Purchase authorizes Dairy Farmers to recover "costs of court" incurred in connection with the Option Claims, but it does not further define which costs constitute "costs of court." ECF 9-2, § 15. Neither party has identified relevant extrinsic evidence bearing on the meaning of this term

---

[7] ████████████████████████████████████

or cited case law interpreting this term in an analogous context. The Court has likewise been unable to locate case law defining "costs of court," as used in a contractual fee-shifting provision.

At the hearing, Dairy Farmers' counsel argued, without citing supporting authority, that the Court should treat the term "costs of court" as synonymous with the term "costs." BLT, on the other hand, argues that the Court should adopt the definition of "court costs" set forth in Black's Law Dictionary, which defines this term as "[t]he charges or fees taxed by the court, such as filing fees, jury fees, courthouse fees, and reporter fees." Courts Costs, Black's Law Dictionary (12th ed. 2024). BLT has the better argument. "It is an elementary rule in the interpretation of contracts that whenever reasonably practicable every word shall be given effect." *DeWolfe v. Hingham Ctr., Ltd.*, 464 Mass. 795, 806 (2013) (quotation marks omitted). And "[w]hen contract language is unambiguous, it must be construed according to its plain meaning." *Balles v. Babcock Power Inc.*, 476 Mass. 565, 571 (2017). Dairy Farmers' interpretation of "costs of court" runs contrary to these precepts. By treating "costs of court" as synonymous with "costs," Dairy Farmers effectively reads the limiting phrase "of court" out of the fee-shifting provision in the Option to Purchase. Such an interpretation must be rejected. *See DeWolfe*, 464 Mass. at 806 (rejecting construction of a contract provision that would give a phrase in that provision "no effect"). Adopting BLT's definition of "costs of court," by contrast, gives effect to each word in this phrase.

The term "cost" is defined generally by Black's Law Dictionary as "[a]n expense incurred to achieve some end." Cost, Black's Law Dictionary (12th ed. 2024). The term "litigation costs" is given a similarly broad definition, encompassing "[t]he expenses of litigation, prosecution, or other legal transaction, esp. those allowed in favor of one party against the other." Litigation Costs, Black's Law Dictionary (12th ed. 2024). Had the Option to Purchase used either of these terms, Dairy Farmers would likely be entitled to recover for all of the costs identified in its fee petition,

given that they can fairly be characterized as expenses incurred to achieve Dairy Farmers' success in this litigation. But the Option to Purchase entitles Dairy Farmers to recover only for "costs *of court*" incurred in this lawsuit. ECF 9-2, § 15 (emphasis added). The synonymous phrase "court costs" is, as discussed, defined more narrowly, encompassing only "[t]he charges or fees taxed by the court, such as filing fees, jury fees, courthouse fees, and reporter fees." Court Costs, Black's Law Dictionary (12th ed. 2024). Agreeing with BLT that this definition reflects the meaning of "costs of court" as used in the Option to Purchase, the Court concludes that Dairy Farmers is not entitled to recover the additional costs that it incurred in this litigation for travel, depositions, document retrieval, ground transportation, lodging, meals, a mock trial, miscellaneous expenses, or its document review vendor. ██████████████

## CONCLUSION AND ORDER

For the foregoing reasons, Dairy Farmers' Petition for Attorneys' Fees and Costs, ECF 159, is GRANTED in part and DENIED in part. Dairy Farmers is awarded $4,437,026.61 in attorney's fees and $24,683.70 in costs.

SO ORDERED.

/s/ Julia E. Kobick
JULIA E. KOBICK
UNITED STATES DISTRICT JUDGE

Dated: October 28, 2025